UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES FERRARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00686-JPH-KMB |
| | ) | |
| PETE BUTTIGIEG Secretary of Transportation, | ) ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Ferrari filed this case alleging that his former employer, the Federal Aviation Administration ("FAA"), failed to reasonably accommodate his allergy-related disability and retaliated against him after he filed an Equal Employment Opportunity ("EEO") complaint. Defendant, Secretary of Transportation Pete Buttigieg, has filed a motion for summary judgment. Dkt. [48]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Ferrari became an Air Traffic Control Specialist with the FAA in July 2013. Dkt. 48-1 at 22–23. That job requires him to meet "stringent health

1

requirements," dkt. 48-2 ¶ 4, similar to that of a pilot, dkt. 48-1 at 30–31.  It's undisputed that in 2016, Mr. Ferrari transferred from New York to Indianapolis and began working as an Air Traffic Control Specialist in the Indianapolis control center.  Dkt. 48-1 at 24–25.  It's also undisputed that, in May 2019, the FAA and Mr. Ferrari agreed that he was permanently medically disqualified.  *See* dkt. 48-24.  Mr. Ferrari then accepted disability retirement from the FAA.  *See* dkt. 48-1 at 227–28.  The dispute in this case relates to what happened in between those events.

By May 2017, Mr. Ferrari had exhausted his sick leave because of various illnesses.  *Id.* at 68.  The FAA then met with Mr. Ferrari and gave him a Letter of Confirmation of Discussion about his attendance responsibilities.  Dkt. 48-3.  That led Mr. Ferrari to see an allergist to investigate why he was missing so much work.  Dkt. 48-1 at 36.  Mr. Ferrari was diagnosed with allergies to dust mites, dogs, grass, pollen, and certain molds.  *Id.* at 82.  His allergy symptoms included "chronic cough, watery eyes, cough resulting in vomiting, . . . coughing up blood, blood discharge from the nose, shortness of breath," and difficulty sleeping.  Dkt. 48-1 at 26, 46.

In August 2017, Mr. Ferrari gave his supervisor a note from his doctor that, because of his allergies, he "needs to work in an environment where [his] exposures are minimized" and "needs to avoid dust mite and mold."  Dkt. 48-4 at 2.  The next month, Mr. Ferrari contacted an FAA EEO counselor alleging that the FAA had not reasonably accommodated his disability.  Dkt. 48-10 ¶ 3.  He then met with two supervisors to discuss his allergy concerns.  Dkt. 48-1 at

100; dkt. 48-2 ¶ 7.  Mr. Ferrari wanted his workspace to be dusted, but the FAA told him that it would be hard for the visible dust on the equipment to be cleaned because only the technical people responsible for the equipment could clean it, which they did every ninety days.  Dkt. 48-1 at 102.

That November, the FAA announced that an annual inspection revealed mold in one of the air handlers on the floor above where Mr. Ferrari worked. *Id.* at 105, 134.  The FAA's memo invited employees to provide medical documentation of any mold-related symptoms so that they could be assigned an alternate work location.  Dkt. 48-5 at 1.  Mr. Ferrari twice requested leave while the mold was remediated, *id.* at 108, 111, but these requests were denied, dkt. 48-2 ¶ 9–10.  Mr. Ferrari then gave the FAA a doctor's note indicating that he has "allergic rhinitis" and "cannot work in an environment where dust-mite[s] and mold are present."  Dkt. 48-8.  The FAA then allowed sick leave until the remediation was completed.  Dkt. 48-1 at 132–33; dkt. 48-2 ¶ 14.  While on that leave, Mr. Ferrari filed a formal EEO Complaint alleging that the FAA refused to provide him reasonable accommodations.  Dkt. 48-11 at 3.

In April 2018—in response to Mr. Ferrari's continued concerns about air quality—the FAA tested the air traffic control facility for "VOC contaminants," which can be given off by mold and dust mites.  Dkt. 48-16 at 5, 13–14; dkt. 48-15 at 1–2.  That testing found that VOC levels were within the range of "normal indoor air" quality, with the total number of spores lower than the outdoor concentration, but that there were fungal spores, including Aspergillus

3

spores, in Mr. Ferrari's work area.  Dkt. 48-16 at 10–11.  Mr. Ferrari requested that mold be "completely remediated" or that "an in-depth Viable Culture Report of the Aspergillus species" be provided showing that the mold levels are "non hazardous to [his] medical disability."  Dkt 48-17.

The FAA allowed Mr. Ferrari to perform administrative duties from his union office through mid-June as a temporary accommodation.  Dkt. 48-1 at 149; dkt. 48-12 at 5; dkt. 48-18 at 3.  The FAA told Mr. Ferrari that to keep this accommodation, he would need to provide "additional medical documentation which outlines your medical conditions and how they affect your performance of the essential functions of your position."  Dkt. 48-18 at 1.  Mr. Ferrari then provided the FAA a note from his allergist that he could not complete complex thought; work under stressful conditions; or walk, stand, or sit for prolonged periods.  Dkt. 48-19 at 2–3.  The allergist added, however, that Mr. Ferrari "should be able to perform all of his job functions if he is moved to a work location without exposure to mold and dust."  *Id.* at 2.  Mr. Ferrari also provided documentation that he had been taking Cetirizine and Proair for his allergies.  Dkt. 48-19 at 1; dkt. 48-1 at 48.  The FAA then terminated his medical clearance to work as an Air Traffic Control Specialist because he was taking disqualifying medications.  Dkt. 48-20.

Later in June, the FAA stopped allowing Mr. Ferrari to do his administrative work from the union office.  Dkt. 48-1 at 183.  Mr. Ferrari then filed a second formal EEO complaint stating that Mr. Holland "threatened to force [him] back to work after the 14-day temporary accommodation."  Dkt. 48-

4

12 at 5. In July, the FAA denied Mr. Ferrari's accommodation requests, including requests for mold testing in more locations and requests be moved to a portion of the facility without allergens. Dkt. 48-29 at 3. That denial noted Mr. Ferrari's medical disqualification and concluded that Mr. Ferrari was not entitled to accommodations because he was not a qualified individual "due to taking a medication not on the approved medication list." *Id.* at 2.

In May 2019, Mr. Ferrari accepted the FAA's finding that he was permanently medically disabled from working as an Air Traffic Control Specialist. Dkt. 48-34. He filed this case in November 2022, alleging that the FAA violated the Rehabilitation Act by failing to provide reasonable accommodations and retaliating against him for filing EEO complaints. Dkt. 1 at 7–8. The FAA has moved for summary judgment. Dkt. 48.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

5

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584.

### III.
### Analysis

**A. Disability discrimination claim**

The Rehabilitation Act prohibits employers from discriminating against an individual with a disability because of the disability.  29 U.S.C. § 794(a).  This covers both "failure-to-accommodate" claims and "disability-discrimination-disparate-treatment" claims.  *Scheidler v. Indiana*, 914 F.3d 535, 540–41 (7th Cir. 2019).  A claim for failure to accommodate "requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate the disability reasonably."  *Id.* at 541.

Here, Mr. Ferrari alleges that the FAA failed to reasonably accommodate his allergy-related disability, which was exacerbated by the conditions in his workplace.  Dkt. 1.  The Secretary argues that he is entitled to summary judgment on the failure-to-accommodate claim because Mr. Ferrari was not a "qualified individual."  Dkt. 49 at 19–20.[1]  "At summary judgment, it is the plaintiff's burden to provide evidence such that a rational jury could find her to

---

[1] Secretary Buttigieg also argues that the "FAA fulfilled its duty to attempt to reassign Plaintiff to another position" once he was disabled.  Dkt. 49 at 20–21.  Mr. Ferrari did not raise a job-search claim in his complaint, *see* dkt. 1, and does not address such a claim in response to summary judgment, *see* dkt. 53.  Mr. Ferrari has therefore "abandoned [any job-search] claim" and may not pursue it.  *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

be a qualified individual," meaning that she "can perform the essential functions of the employment position either with or without reasonable accommodation." *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 628 (7th Cir. 2020) (quoting 42 U.S.C. § 12111(8))[2]; *see Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 995 (7th Cir. 2024). "Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 967–68 (7th Cir. 2020).

Mr. Ferrari has designated evidence that he successfully worked as an Air Traffic Control Specialist both in Los Angeles and New York, and when he began work at the Indianapolis Control Center, so it's clear that he was capable of performing the essential functions of an Air Traffic Control Specialist. *See* dkt. 48-1 at 22–25. That leaves only the question whether a reasonable jury could find that reasonable accommodations could have allowed Mr. Ferrari to continue to perform those job duties at the Indianapolis Air Traffic Control Center. That looks to the time of Mr. Ferrari's accommodation requests. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000) ("Whether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made.").

Defendant argues that Mr. Ferrari has "admitted that he could not perform the essential functions of his position as an Air Traffic Control

---

[2] The Court cites cases applying the ADA because the ADA and Rehabilitation Act are "materially identical," so "courts construe and apply them in a consistent manner[.]" *A.H. ex rel. Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018).

7

Specialist" and has not designated evidence showing "there was an accommodation that would enable [him] to perform his duties as an Air Traffic Control Specialist." Dkt. 49 at 19. In support, he cites Mr. Ferrari's May 18, 2019 acceptance of the flight surgeon's finding that he was permanently medically disqualified, dkt. 48-34, and his testimony that he was medically incapacitated and will never again "be able to perform the duties of an air traffic control specialist," dkt. 48-1 at 160. Those concessions, which Mr. Ferrari reiterates in his brief, dkt. 53 at 11, mean that no reasonable jury could find that Mr. Ferrari could perform the essential functions of the job, with or without reasonable accommodation, beginning May 18, 2019. His claim therefore ends then.

    Those concessions, however, are based on a later permanent disability from needing disqualifying medication, so they do not apply throughout Mr. Ferrari's disability and accommodation requests. The designated evidence shows that Mr. Ferrari was severely allergic to mold and dust mites. Dkt. 48-1 at 81:22-82:1. This includes notes from his doctor stating that "his condition has been greatly exacerbated by exposure to dust and mold in the work environment," dkt. 48-19 (Dr. Epstein note 6/6/18), and that Mr. Ferrari "NEEDS TO AVOID DUST MITE AND MOLD . . . and needs to work in an environment where these exposures are minimized." dkt. 48-4 at 2 (Dr. Epstein note 7/19/17).

    The designated evidence also shows that there was Aspergillus mold spores and visible dust in and around Mr. Ferrari's workspace. Dkt. 48-1 at

8

101–02.  And that Mr. Ferrari made requests for the FAA to make his workspace free of those allergens.  First, he asked to the FAA to clean the dust that was visibly present on the computers and workspaces.  *See* dkt. 48-1 at 102.  Second, he requested that the Aspergillus be "completely remediated" or "determined non hazardous to [his] medical disability."  Dkt. 48-17.  The FAA did not do either.  Given his past satisfactory performance as an Air Traffic Control Specialist, a reasonable jury could find from the designated evidence that Mr. Ferrari would have been able to again perform those same job duties and responsibilities if his workplace was cleaned and the air remediated.

    Defendant nonetheless argues that Mr. Ferrari cannot show he was a "qualified individual" because "his requested accommodation that mold be completely remediated from the air was impossible."  Dkt. 49 at 20.  But while the indoor air quality assessment found that the mold spore count in the air inside of Indianapolis Control Center was lower than in the outside air, the report does not indicate that further remediation was unreasonable or impossible.  Dkt. 48-16.  Furthermore, the report shows that the air in multiple areas of the ICC was entirely free of spores.  Dkt. 48-16 at 11 (table to report showing no spores detected in air samples collected from Areas 1, 4, 5, TMU, CSSU).

    Here, Secretary Buttigieg has not designated uncontroverted evidence that Mr. Ferrari's requested accommodations—such as dusting and Aspergillus mold testing and remediation—would not have allowed him to do his job.  Nor has he shown that those suggested accommodations were unreasonable.  The

9

Secretary points to test results that "VOC" contaminants in Mr. Ferrari's workspace were within the range of "normal indoor air" quality, dkt. 48-16 at 5, 13–14, and that concentrations of fungal spores in Mr. Ferrari's workspace were lower than outside levels, dkt. 48-16 at 10. But that does not demonstrate that the air quality was at acceptable levels for Mr. Ferrari's disability, or that it could not be reasonably remediated to an acceptable level. Similarly, while Secretary Buttigieg relies on Mr. Ferrari's admission that mold can never be completely removed from the air, dkt. 48-1 at 147, that does not address Mr. Ferrari's request that Aspergillus mold be "completely remediated or . . . determined non-hazardous to my medical disability," dkt 48-17.

    The designated evidence here therefore does not establish that, as a matter of law, Mr. Ferrari "could not [] be assisted in carrying out" his job's essential functions. *Lenker v. Methodist Hosp.*, 210 F.3d 792, 796–97 (7th Cir. 2000). This fact-intensive situation is not a case when Mr. Ferrari failed to seek accommodations, or when the requested accommodation itself would necessarily prevent an employee from performing an essential duty. *See e.g.*, *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 67–80 (7th Cir. 2010) (court reporter refusing all accommodations other than out of court reporting); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) (employee requesting others move heavy items rather than suggesting an accommodation that could allow him to move the items).

    While the FAA designated evidence that it provided some substantial accommodations, the sole basis that Secretary Buttigieg raises for summary

judgment on this claim is that Mr. Ferrari cannot show that he was a "qualified individual"—that is, that he could perform the essential functions of an Air Traffic Control Specialist with or without reasonable accommodation. *See* dkt. 49 at 19–20; *Kotaska*, 966 F.3d at 628. Secretary Buttigieg accordingly does not argue that summary judgment is appropriate because the FAA sufficiently engaged in an interactive process to find reasonable accommodations, or because any accommodations that Mr. Ferrari requested would have presented an undue hardship. *See McAllister*, 983 F.3d at 968 (If the employee "proves she was a qualified individual," then the employer "has the burden to establish that the accommodation would have created an undue hardship on the business."); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) ("After an employee has disclosed that she has a disability," the employer must "engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances."). So it is not before the Court at summary judgment whether the accommodations provided were reasonable as a matter of law. *See Majors*, 714 F.3d at 534–35 (whether plaintiff was a "qualified individual" and whether defendant "failed to provide a reasonable accommodation" are separate elements).

      Here, with only the qualified individual analysis at issue, it's enough that a reasonable jury could find that Mr. Ferrari had previously worked as a qualified Air Traffic Control Specialist and "may have been able to [again] perform the essential functions of the job *with reasonable accommodation*." *Bultemeyer v. Ft. Wayne Cmty. Schs.*, 100 F.3d at 1281, 1284–85 (7th Cir.

11

1996); *see Lenker*, 210 F.3d at 797 (Providing some accommodations "did not relieve the hospital of its duty to accommodate Lenker in other ways if possible."). Because there is a triable issue of fact about whether Mr. Ferrari was a qualified individual, summary judgment is denied on Mr. Ferrari's disability discrimination claim.

### B. Retaliation claim

To prevail on a retaliation claim under the Rehabilitation Act, Mr. Ferrari must show that: "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse action by [the FAA]; and (3) there is a causal link between [his] protected expression and the adverse action." *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023). Secretary Buttigieg argues that no reasonable jury could find a causal link between Mr. Ferrari's EEO complaint and the alleged retaliation. Dkt. 49 at 21–24. Mr. Ferrari does not directly address his retaliation claim in opposing summary judgment, but he appears to argue that the FAA retaliated against him for his EEO complaints by telling him he could not work in the union office and would have to return to his normal work location if he did not provide medical documentation. Dkt. 53 at 5–6.

Mr. Ferrari filed his first formal EEO complaint in December 2017.[3] Dkt. 48-11, 1. Yet he does not argue that the FAA retaliated until June 2018, when his request to work from his union office was denied. Dkt. 53 at 5. Moreover, the request was denied because that office did not have the equipment for Mr.

---

[3] Mr. Ferrari filed a second formal EEO complaint on August 31, 2018 dkt. 48-12 at 5, however he does not argue that any retaliation occurred after that time. Dkt. 53.

Ferrari to be able to perform his job, which Mr. Ferrari admits. Dkt 48-1, 165–66. Mr. Ferrari therefore has not designated evidence allowing a reasonable jury to find any causal connection "between protected activity and adverse action" as required to survive summary judgment. *Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012).

Finally, Mr. Ferrari implies that his supervisor's request for medical documentation was also retaliatory behavior and that he felt threatened. Dkt. 53, 5. He cites no authority, however, suggesting that requesting medical documentation for a disability is evidence of retaliation and designates no evidence suggesting a causal connection between his EEO complaint and his supervisor's statements. *See id.*

Therefore, the FAA is entitled to summary judgment on Mr. Ferrari's retaliation claim.

## IV.
## Conclusion

The Secretary Buttigieg's motion for summary judgment is **DENIED** on Mr. Ferrari's reasonable accommodation claim and **GRANTED** on his retaliation claim. Dkt. [48]. Magistrate Judge Barr is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 12/19/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel